UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEAN DRULIAS, on behalf of himself
and all others similarly situated,

     *Plaintiff,*

v.

ADE CORPORATION, HARRIS CLAY,
LANDON T. CLAY, H. KIMBALL
FAULKNER, CHRIS L. KOLIOPOULOS
KENDALL WRIGHT, KLA TENCOR
CORPORATION AND SOUTH
ACQUISITION CORPORATION,

     *Defendants.*

Civil Action No. 06-11033 PBS

## FIRST AMENDED COMPLAINT

Plaintiff, as and for his First Amended Complaint, alleges as follows based upon personal knowledge as to himself and his own acts, and upon information and belief derived from, *inter alia*, a review of documents filed by defendants with the Securities and Exchange Commission (the "SEC") and publicly available news sources, such as press releases by the defendants and newspaper articles from prominent financial periodicals such as The Wall Street Journal, as to all other matters:

## NATURE OF THE ACTION

1.     This is a shareholder class action on behalf of the public stockholders of ADE Corporation ("ADE" or the "Company") against its directors (the "Individual Defendants") and others.  Plaintiff alleges that the definitive proxy statement defendants mailed to ADE's shareholders on or about June 16, 2006 in conjunction with the sale of ADE to a subsidiary of

KLA-Tencor Corporation ("KLA-Tencor") (the "Proposed Sale") contains inaccurate statements of material fact and omits to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n, and Rule 14 (a)(9) promulgated thereunder, Mass. L. ch. 110A § 404, Mass. L. ch. 110C §7, §9, and the Massachusetts common law.

2.      Plaintiff also alleges, *inter alia*, that the Individual Defendants violated their fiduciary duties of care and loyalty owed ADE's public shareholders under Massachusetts common law in voting to approve the Proposed Sale at an inadequate price and with inadequate protection for ADE's shareholders, and further alleges that each of ADE's directors had and has a conflict of interest since, *inter alia,* each director of ADE will gain pecuniary and other benefits beyond that received by ADE' public shareholders as a result of the Proposed Sale, and are therefore not entitled to any presumptions conferred by the business judgment rule.

## JURISDICTION AND VENUE

3.      Jurisdiction over plaintiff's federal claims exists in this Court under 28 U.S.C. § 1331.  Supplemental jurisdiction over plaintiff's Massachusetts law claims exists under 28 U.S.C. § 1367.

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because a majority of the defendants reside in this district and a substantial portion of the events giving rise to plaintiff's claims arise in this district.

## PARTIES

5.      Plaintiff Dean Drulias has owned shares of ADE common stock since prior to June 1, 2005 and continues to own such shares.

6.       Defendant ADE is a Massachusetts corporation with its principal executive offices at 80 Wilson Way, Westwood, Massachusetts 02090.  ADE was founded by Robert C. Abbe and was incorporated in 1967.  The Company became a publicly traded company in 1995. ADE is engaged in the design, manufacture, marketing and service of production metrology and inspection systems for the semiconductor wafer, semiconductor device, magnetic data storage and optics manufacturing industries.  Its systems analyze and report product quality at critical manufacturing process steps, sort wafers and disks, and provide manufacturers with quality certification data upon which they rely to manage processes and accept incoming material. Semiconductor wafer, device, magnetic data storage and optics manufacturers use its systems to improve yield and capital productivity.

7.       Defendant Harris Clay ("Harris Clay") has been a director of ADE since 1970. He has been self-employed as a private investor during the past five years.  Harris Clay is a member of the following committees of the Company's board of directors:   audit and nominating.  Pursuant to the Proposed Sale, Harris Clay will receive a lump sum payment of $170,250 for his stock options, of which $146,730 can be attributed to options not yet vested. Harris Clay owns 6.1% of ADE's outstanding voting shares.

8.       Defendant Landon T. Clay ("Landon Clay") has been a director of ADE since 1970 and Chairman of the Board since 1979.   From 1971 until 1997, he served as Chairman of Eaton Vance Corp., a mutual fund management and distribution company.  Landon Clay serves as Chairman of East Hill Management LLC, a registered investment advisor, which he founded in 1997.  Landon Clay is a member of the following committees of the Company's board of directors:   compensation and nominating.   Pursuant to the Proposed Sale, Landon Clay will receive a lump sum payment of $170,250 for his stock options, of which $146,730 can be

attributed to options not yet vested.  Landon Clay owns 12.1% of ADE's outstanding voting shares.

9.      Defendant H. Kimball Faulkner ("Faulkner") has been a director of ADE since 1970 and has been retired for the past five years. He was formerly a self-employed small business consultant.  Faulkner is a member of the following committees of the Company's board of directors:  audit and compensation.  Pursuant to the Proposed Sale, Faulkner will receive a lump sum payment of $170,250 for his stock options, of which $146,730 can be attributed to options not yet vested.

10.     Defendant Chris L. Koliopoulos ("Koliopoulos") was elected President and Chief Executive Officer of ADE in 2002 and has been a director of ADE since 1998, when the company founded by Koliopoulos, Phase Shift Technology, Inc., merged into ADE. Koliopoulos is a member of the nominating committee of the Company's board of directors. Pursuant to the Proposed Sale, Koliopoulos is entitled to receive $814,000 in severance payments and he will participate in the future growth of ADE since the 100,000 options to purchase ADE stock that he holds will be converted into options to purchase shares of KLA-Tencor.  Koliopoulos owns 5.8% of ADE's outstanding voting shares.

11.     Defendant Kendall Wright ("Wright") has been a director of ADE since 1983 and has been a business, marketing and operations management consultant during the past five years. Wright is a member of the audit committee of the Company's board of directors and has been designated by ADE's board as the "audit committee financial expert."  Wright is also a member of the compensation committee.  Pursuant to the Proposed Sale, Wright will receive a lump sum payment of $170,250 for his stock options, of which $146,730 can be attributed to options not yet vested.

12.     Defendant KLA-Tencor is an out-of-state corporation with its principal address at 160 Rio Robles, San Jose, California 95134.   KLA-Tencor is the world leader in yield management and process control solutions for semiconductor manufacturing and related industries. Its comprehensive portfolio of products, software, analysis, services and expertise is designed to help integrated circuit manufacturers manage yield throughout the entire fabrication process from research and development to final mass-production yield analysis.

13.     Defendant South Acquisition Corporation ("South") is a wholly-owned subsidiary of KLA-Tencor, formed solely for the purpose of facilitating KLA-Tencor's acquisition of ADE.

14.     Defendants Harris Clay and Landon T. Clay are brothers.   Four of the five directors of ADE, defendants Harris Clay, Landon Clay, Wright and Faulker – ages 78, 79, 79 and 74 respectively – have had long tenures on ADE's board, having served on ADE's board since 1970 (three years after the Company was formed in 1967) in the case of Harris Clay, Landon Clay and Faulkner, and 1983 in the case of defendant Wright.   Thus, and particularly given their ages, they have a personal interest in selling the Company so that they can retire.

15.     Also, as alleged above, and further enhancing their personal interest in selling the Company, defendants Harris Clay, Landon Clay, Wright and Faulker will receive approximately $146,730.00 each for their unvested options upon the consummation of the Proposed Sale – monies they would not receive now, if ever, absent the sale of the Company.  In addition, options held by the fifth director - defendant Koliopoulos - to purchase shares of ADE stock will be converted into options to purchase shares of KLA-Tencor (by contrast, plaintiff and ADE's public shareholders will be "cashed out" of their interest in ADE).  Thus, each director has personal incentives to sell the Company and an irremediable conflict of interest with respect to

the Proposed Transaction.  The defendants identified in this paragraph are hereinafter sometimes referred to collectively as the "Individual Defendants."

16.     By virtue of their positions as directors, and where applicable, officers of ADE and/or their exercise of control and ownership over the business and corporate affairs of ADE, the Individual Defendants have, and at all relevant times had, the power to control and influence and did control and influence and cause ADE to engage in the practices complained of herein. Each Individual Defendant owed and owes ADE and its shareholders fiduciary obligations of care and loyalty under Massachusetts law and were and are required to: (1) use their ability to control and manage ADE in a fair, just and equitable manner; (2) act in furtherance of the best interests of ADE and its shareholders; (3) act to maximize shareholder value in connection with any change in ownership and control; (4) govern ADE in such a manner as to heed the expressed views of its public shareholders; (5) refrain from abusing their positions of control; and (6) not to favor their own interests or KLA-Tencor's interests at the expense of ADE and its public shareholders.

17.     Each defendant herein is sued individually and/or as a conspirator and aider and abetter.  The Individual Defendants are also sued in their capacity as directors of ADE.  The liability of each defendant arises from the fact that they have engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all ADE stockholders from February 22, 2006 to the present. Excluded from the Class are defendants, members of the immediate families of the defendants, their heirs and assigns, and those in privity with them.

19.    The members of the Class are so numerous that joinder of all of them would be impracticable.  While the exact number of Class members is unknown to plaintiff, and can be ascertained only through appropriate discovery, plaintiff believes there are many hundreds, if not thousands, of Class members.  ADE has over 14 million shares of common stock outstanding.

20.    Plaintiff's claims are typical of the claims of the Class, since plaintiff and the other members of the Class have and will sustain damages arising out of defendants' breaches of their fiduciary duties.  Plaintiff does not have any interests that are adverse or antagonistic to those of the Class.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel competent and experienced in this type of litigation.

21.    There are questions of law and fact common to the members of the Class that predominate over any questions which, if they exist, may affect individual class members.  The predominant questions of law and fact include, among others, whether:

(a)    the defendants have and are breaching their fiduciary duties of care and loyalty to the detriment of ADE shareholders under Massachusetts law;

(b)    the defendants have violated the Securities Exchange Act of 1934 and Section 14(a)(9) promulgated thereunder, the Massachusetts Code or the common law through signing and circulating a proxy statement with materially inaccurate and misleading statements in it to ADE shareholders; and

(c)    the Class has been damaged and the extent to which members of the Class have sustained damages, and what is the proper measure of those damages.

22.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Further, as individual damages may be relatively small for most members of the Class, the burden and expense of prosecuting litigation of this nature makes it unlikely that members of the Class would prosecute individual actions.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Further, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying results, which may establish incompatible standards of conduct for defendants.

## SUBSTANTIVE ALLEGATIONS

### Background to the Proposed Sale

23.     According to the definitive proxy statement that ADE filed with the Securities and Exchange Commission on June 14, 2006, and mailed to ADE stockholders on or about June 16, 2006 (the "Definitive Proxy Statement"), in July 2005 representatives of KLA-Tencor approached ADE regarding a potential business combination of ADE and KLA-Tencor. Thereafter, the parties engaged in negotiations which culminated in the execution of an agreement, entered into on February 22, 2006.  Pursuant to the agreement, KLA-Tencor would acquire ADE in a stock-for-stock transaction wherein each ADE shareholder would receive 0.64 of a share of KLA-Tencor for each outstanding share of ADE common stock he or she held (the "February 22nd Agreement").  According to thedeal.com, this exchange ratio amounted to a purchase price of $33.19 per share based on KLA-Tencor's February 23, 2006 closing stock price of $51.86, a 7.2% premium for ADE.  Further, research analyst Suresh Balaraman of ThinkEquity Partners LLC stated as follows with regard to the Proposed Sale:  "KLA is buying

a company with a reasonably good business with some cleaning up to do, but at a very cheap valuation."

24.     The Individual Defendants did not retain a financial advisor to advise them during negotiations with KLA-Tencor nor did they see fit to conduct a "market check" or otherwise solicit indications of interests from other potential acquirors of the Company in order to maximize the value of any sale of ADE to ADE's public shareholders.  Rather, they negotiated only with KLA-Tencor, ultimately accepting its offer.

25.     The sale of ADE to KLA-Tencor was negotiated and entered into at a time when the Company's financial prospects appeared to be on the rise.  As demonstrated in the graph below (extracted from the Company's Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 filed with the Securities and Exchange Commission on August 19, 2005) over the prior five years, the Company's stock performance had regularly outperformed both its peers, as reflected by Philadelphia Semiconductor Index, as well as the broader market, as reflected in the NASDAQ-US Index.



|  | April 2000 | April 2001 | April 2002 | April 2003 | April 2004 | April 2005 |
|---|---|---|---|---|---|---|
| ADE Corporation | $ 100.00 | $ 90.50 | $ 74.32 | $ 34.33 | $ 101.46 | $ 121.32 |
| Philadelphia Semi. Index | 100.00 | 56.60 | 44.97 | 28.49 | 38.07 | 33.24 |
| NASDAQ-US Index | 100.00 | 54.95 | 43.98 | 38.33 | 50.50 | 50.84 |

26.    Further, following the execution of the February 22nd Agreement, the Company's financial prospects and prospects for future growth appeared to be further increasing.  For example, on March 7, 2006, ADE announced its financial results for its third quarter fiscal 2006 ended January 31, 2006, which exceeded the Company's financial guidance for revenue and net income.  Defendant Koliopoulos stated as follows with regard to the Company's results:

> ADE continued to perform well in the third fiscal quarter, *exceeding its financial guidance range for revenue and net*

*income*, and showing growth in new orders and gross margin as well as cash.

27.     In addition, on April 12, 2006, ADE announced that it had received a multi-million dollar order for 300mm production wafer quality certification and process control systems from a major semiconductor wafer supplier (the "April 12th Press Release").  Defendant Koliopoulos stated as follows with regard to this order:

> This multi-million dollar order …. continues to reflect the growth of 300mm wafer capacity and represents the first expansion of 300mm silicon wafer production in the United States.

28.     In the April 12th Press Release, it was also noted that Gartner Dataquest predicted that 300mm wafer demand would grow by 41% in 2006 and by an additional 20% in 2007.   On June 1, 2006, Gartner Dataquest further estimated that 300mm wafer demand will grow by 41% in 2006, 18% in 2007 and 40% in 2008.

**Despite Evidence of ADE's Prospects for Greater Growth, Defendants Renegotiated the Sale of ADE to Provide for Lesser Consideration to ADE Shareholders**

29.     On May 26, 2006, KLA-Tencor and ADE jointly announced that they had amended and restated their existing merger agreement to change the consideration that ADE stockholders would receive from KLA-Tencor common stock to $32.50 per share in cash (the "Restated Sale Consideration").

30.     Notably, despite the indications of ADE's prospects for growth, as reflected in its financial results and its receipt of multi-million dollar orders, and predicted increases in demand for products produced by ADE, as reflected in Gartner Dataquest's predictions, the consideration of $32.50 offered to ADE's stockholders pursuant to the Restated Sale Consideration was lower than the imputed value that ADE's stockholders would have received under the February 22nd Agreement at the time it was entered into, which thedeal.com had placed at $33.19.

31.     While KLA-Tencor's common stock declined during the period from February 22, 2006 through May 26, 2006, ADE's business model and prospects had improved during that time-frame.  Thus, had the Individual Defendants complied with their duties of care and loyalty, they would have renegotiated so that the price to be paid to ADE shareholders was higher than the original $33.19 per share at the time the Proposed Sale was first approved, not less.

32.     In addition, the defendants caused ADE to agree to pay KLA-Tencor a termination fee of $15 million in the event that ADE enters into a superior agreement to sell the company, among other things.

### The Individual Defendants' Conflicts of Interests

33.     Under the terms of the Proposed Sale, outstanding stock options held by ADE's non-employee directors, whether or not exercisable or vested, will be cancelled and ADE will pay each director for each such stock option pursuant to a specified formula.  According to the Definitive Proxy Statement, each ADE non-employee director (*i.e.* defendants Harris Clay, Landon Clay, Faulkner and Wright) will receive a lump sum payment of $170,250 for his options upon the closing of the merger, of which $23,520 can be attributed to vested options and $146,730 can be attributed to options not yet vested.

34.     In addition, defendant Koliopoulous is entitled to receive severance payments of $814,000 under specified circumstances upon the termination of his employment following the consummation of the Proposed Sale, while his ADE options will be converted into the right to purchase shares of KLA-Tencor.

35.     Further, pursuant to the Proposed Sale, ADE's officers and directors will have rights to indemnification for acts or omissions for six years after the effective time of the transaction–thereby insulating them from all liability arising from the Proposed Sale.

**The Individual Defendants Have the Burden of Establishing the "Entire Fairness" of the
Proposed Sale, Which Under the Facts Alleged Above, They Cannot Do**

36.     Under applicable common law, in any situation where the directors of a publicly
traded corporation undertake a transaction such as the Proposed Sale that will result in either an
(a) change in corporate control, or (b) break-up of a corporation's assets, the directors have an
affirmative fiduciary obligation to obtain the highest value reasonably available for the
corporation's shareholders, and if such a transaction will result in a sale of the company or a
change of control, the shareholders are entitled to a significant premium.  Further, the directors
and/or officers are obligated to prove the entire fairness of any transaction (i.e. fairness of both
the process employed and the price to be paid for the stock):

(a)     where the directors and/or officers' loyalties are divided;

(b)     where the directors and/or officers receive, or are entitled to receive, a
personal financial benefit not equally shared by the public shareholders of the corporation;
and/or

(c)     where the directors will unjustly enrich themselves at the expense of or to
the detriment of the public shareholders.

37.     In the present case, as alleged above, a majority of the Individual Defendants have
divided loyalties since they will receive personal financial benefits not equally shared by ADE's
public shareholders and thus will be unjustly enriched to the detriment of ADE's public
shareholders.  Thus, the Individual Defendants will have the burden of proving the "entire
fairness" of the Proposed Sale, which for the reasons alleged above, they will not be able to do.

38.     As alleged in detail herein, defendants have breached, and/or aided other
defendants' breaches of, their fiduciary duties to ADE's public shareholders by acting to cause or
facilitate the acquisition of the Company by KLA-Tencor for unfair and inadequate consideration

and by failing to renegotiate the terms of the Proposed Sale to provide for a commensurate increase in the consideration payable to ADE's stockholders.

## FIRST CAUSE OF ACTION

**(BREACH OF FIDUCIARY DUTIES OF CARE AND LOYALTY UNDER MASSACHUSETTS LAW)**
**(AGAINST ALL DEFENDANTS EXCEPT ADE AND KLA-TENCOR)**

39.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

40.     The Individual Defendants have violated the fiduciary duties they owe to the shareholders of ADE.  The Individual Defendants' negotiation and agreement to the terms of the Proposed Sale, including the negotiation of the Restated Sale Consideration, demonstrate an absence of the exercise of care and of loyalty to ADE's public shareholders.

41.     In agreeing to the Proposed Sale, the Individual Defendants failed to properly inform themselves of ADE's highest transactional value and failed to do so because of their personal interest in quickly agreeing upon the Proposed Sale and thereby obtaining the improper personal benefits they will receive as a result.

42.     By causing ADE to enter into the Proposed Sale with KLA-Tencor because of the personal benefits they will receive, the Individual Defendants have deprived plaintiff and the Class of the opportunity to realize the higher price other buyers might be willing to pay for ADE shares, or the value that their ADE shares would have if the Company remains independent. Despite the obvious long-term value of ADE for KLA-Tencor, ADE's shareholders will be receiving an inadequate takeover premium over ADE's stock price prior to the announcement of the Proposed Sale.  Further, the substantial synergies which KLA-Tencor will enjoy by virtue of the acquisition of ADE are not being adequately compensated for in the agreement the Individual Defendants caused ADE to enter with KLA-Tencor.

43.    In addition, the $32.50 amount to be paid to ADE's public shareholders is unfairly low given that (a) the intrinsic value of ADE's common stock is in excess of the $32.50 per share offered by KLA-Tencor, giving due consideration to the Company's prospects for growth and profitability in light of its business and present and future earnings power; and (b) it is not the result of an appropriate consideration of the value of ADE because the ADE board approved the Proposed Sale without undertaking steps to fairly and accurately ascertain ADE's value.  Indeed, the $32.50 offered by KLA-Tencor is below the 52-week high of $34.60 at which Company's common stock has traded within the last year.

44.    The Individual Defendants failed to make an informed decision, as no market check of ADE's value was obtained.  Indeed, the Individual Defendants negotiated solely with KLA-Tencor and agreed that they would not solicit other indications of interest.  Nor did they so much as hire an investment adviser to advise or aid them in their discussions with KLA-Tencor. Moreover, as alleged herein, despite evidence that ADE is poised for greater future growth, the Individual Defendants subsequently agreed to a reduced, not a higher, price for ADE.   In addition, the Individual Defendants agreed to pay KLA-Tencor a termination fee of $15,000,000 were they to accept a proposal that is superior to the Proposed Sale.

45.    As a result, plaintiff and the Class have been and will be suffer damages, including damages for which they have an inadequate remedy at law.

### SECOND CAUSE OF ACTION

**(VIOLATION OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934, 15 U.S.C. § 78n AND RULE 14(a)(9) PROMULGATED THEREUNDER, MASS L. CH. 110A § 404, MASS L. CH. 110C § 7, § 9 AND THE COMMON LAW) (AGAINST ALL DEFENDANTS EXCEPT KLA-TENCOR)**

46.    Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

47.     The Defendants, other than KLA-Tencor, have circulated a proxy statement containing materially false statements and that omits statements that are material to the shareholders' vote on the Proposed Sale and the shareholders' decision whether to pursue appraisal rights.  The circulation of this proxy has and will cause the class injury.  Further, plaintiff and the class have relied on the proxy and, at all events, reliance may be presumed as a matter of law.

48.     Moreover, the conduct complained of below also constitutes evasive, deceptive, manipulative or grossly unfair practices in connection with a takeover as prohibited by Mass. L. ch. 110C §7.

49.     Additionally, under Massachusetts common law, the directors of a publicly held company such as ADE have a fiduciary duty of fair disclosure and candor, and are liable to shareholders for the breaches thereof as alleged below.

50.     In the Definitive Proxy Statement mailed to ADE shareholders in connection with the Proposed Sale, the defendants other than KLA-Tencor, have violated their fiduciary duty of disclosure and their responsibilities under Massachusetts statutes and federal proxy law by making inaccurate statements and/or concealing and/or failing to disclose certain material facts, among others, necessary to make their statements in the Definitive Proxy Statement not misleading in light of the context in which they were made.  Specifically, the Definitive Proxy Statement contains inaccurate statements or fails to disclose certain information as set forth below.

   a.  The Definitive Proxy Statement flatly and inaccurately states that ADE stockholders are *not* entitled to any dissenters' or appraisal rights in connection with the Proposed Sale.  *See* Definitive Proxy Statement at p. 42.  However, pursuant to Mass. Business Corporation Code, ch. 156D, § 13.02 (a)(1), ADE shareholders are entitled to dissenters or appraisal rights.

This is because defendants Harris Clay and Landon T. Clay, who each hold more than 5% of ADE's outstanding stock, have a direct or indirect material financial interest in the Proposed Sale since each will receive payments for the accelerated vesting of stock options. Similarly, defendant Koliopoulos, who also holds more than 5% of ADE's outstanding stock, has a material financial interest in the Proposed Sale since his ADE options will be converted into options to purchase shares of KLA-Tencor common stock.

Defendants' inaccurate statement that ADE shareholders are not entitled to dissenter or appraisal rights is material because ADE shareholders are being asked to vote for the Proposed Sale and/or not to seek appraisal based on this erroneous information and, in the only communication that the Company and its directors will send them concerning the Proposed Sale, are inaccurately being told that they have no right to pursue appraisal.

b. The substance of the subpoenas that the U.S. Attorney's Offices for the Eastern District of New York and the Northern District of California had sent to KLA-Tencor and the substance of the shareholder suit that was filed against KLA-Tencor on May 22, 2006, all of which apparently relate to the backdating of options awarded to KLA-Tencor executives – an event that has drawn national scrutiny and is turning into a nationwide scandal. *See* Definitive Proxy Statement at p. 15.

This information is relevant because the Proposed Sale is conditioned on the absence of any event that has had or reasonably would be expected to have a materially adverse effect on KLA-Tencor's ability to consummate the Proposed Sale. Needless to say, U.S. Attorney subpoenas and major shareholder class actions directed to KLA-Tencor can certainly be expected to have such an effect, or at least potentially have an effect on KLA-Tencor's ability to pay for the Proposed Sale.

c. The Definitive Proxy Statement discloses that KLA-Tencor would reimburse $2 million in expenses if "certain conditions" are not complied with, however it fails to disclose the nature of those "certain conditions." *See* Definitive Proxy Statement at p. 41.

Information regarding any material amount of money ADE might receive if the Proposed Sale were not consummated is

relevant to ADE's shareholders in casting their vote on the Proposed Sale.

d.  The Definitive Proxy Statement states that KLA-Tencor's stock dropped during February 2006, and that Landon Clay, Koliopoulos and others had a meeting on February 22, 2006 during which they discussed whether the drop was related to a "known adverse change" in KLA-Tencor's long-term business prospects.  However, the Definitive Proxy Statement does not disclose what conclusions Landon Clay, Koliopoulos and others reached about KLA-Tencor's long-term business prospects at this meeting. *See* Definitive Proxy Statement at p. 14-15.

This information is relevant because the Proposed Sale is conditioned on the absence of any event that has had or reasonably would be expected to have a materially adverse effect on KLA-Tencor's ability to consummate the Proposed Sale.  Obviously, the conclusion reached by several of ADE's directors at a meeting where they discussed whether such an event had occurred is material to ADE shareholders, particularly because they are self-interested in the transaction and may have withheld a conclusion that such an event had occurred because it was in their own personal financial interest.

e.  The Definitive Proxy Statement does not disclose the extent of the director's breaches of their fiduciary duty of care.

Information regarding what how the board complied with its fiduciary duties is relevant to shareholders in determining whether to vote to accept the Proposed Sale.

f.  The Definitive Proxy Statement does not disclose the extent of the director's breaches of their fiduciary duty of loyalty.

Information regarding what how the board complied with its fiduciary duties is relevant to shareholders in determining whether to vote to accept the Proposed Sale.

g.  The substance of the patent infringement litigation between ADE and KLA-Tencor that had been resolved in January 2005, and the terms of its resolution.  *See* Definitive Proxy Statement at p. 9.

This information is material because the Proposed Sale first started to be negotiated in July 2005, and the then recent

settlement of the patent litigation and the terms of its resolution may well have given KLA-Tencor undue influence over ADE and its board and allowed them to negotiate a lower price than would have otherwise been the case.

h.   The Definitive Proxy Statement discloses that ADE provided RBC Capital Markets Corporation ("RBC") with financial, legal, tax, operating, and other information which RBC relied upon in rendering its fairness opinion (which ADE shareholders are being asked to rely upon). However, the Definitive Proxy Statement fails to disclose this information to ADE's shareholders. *See* Definitive Proxy Statement at p. 18.

Information used by a financial advisor to render its fairness opinion is material to the public shareholders of ADE in determining how much weight to place on the fairness opinion and must therefore be disclosed.

i.   As alleged above, following ADE's agreement to the Proposed Sale, the Company received additional multi-million dollar orders for its products. However, the Proxy fails to disclose the effect of these new orders on the Company's financial projections.

Information regarding the Company's prospects should the Proposed Sale be rejected is relevant to shareholders in determining whether to vote to accept the Proposed Sale.

j.   The Definitive Proxy Statement discloses that ADE's management provided RBC with numerous assumptions with respect to industry performance, general business and economic conditions and other matters, but does not disclose what those assumptions were. *See* Definitive Proxy Statement at p. 24.

Information used by a financial advisor to render its fairness opinion is material to the public shareholders of ADE in determining how much weight to place on the fairness opinion and must therefore be disclosed.

k.   With regard to RBC's *Comparable Company Analysis*, the Definitive Proxy Statement is deficient in that it fails to disclose the multiples for each of the companies reviewed for this analysis, including the underlying data used to calculate each multiple. *See* Definitive Proxy Statement at pp. 19-21.

Information used by a financial advisor to render its fairness opinion is material to the public shareholders of ADE in determining how much weight to place on the fairness opinion and must therefore be disclosed.

l.   With regard to RBC's *Precedent Transaction Analysis*, the Definitive Proxy Statement is deficient in that it fails to disclose the multiples for each of the transaction reviewed for this analysis, including the underlying data used to calculate each multiple.  *See* Definitive Proxy Statement at pp. 21-22.

Information used by a financial advisor to render its fairness opinion is material to the public shareholders of ADE in determining how much weight to place on the fairness opinion and must therefore be disclosed.

m.   The Definitive Proxy Statement does not include a Discounted Cash Flow ("DCF") analysis conducted by RBC.  Given that a DCF analysis is regularly conducted in the course of valuing a Company, the Definitive Proxy Statement is deficient in that it fails to disclose the results of this analysis, or, if RBC did not conduct a DCF analysis, RBC's rationale for not doing so.

Information used by a financial advisor to render its fairness opinion is material to the public shareholders of ADE in determining how much weight to place on the fairness opinion and must therefore be disclosed.

51.   Notwithstanding the failure to disclose the above material information, the defendants have indicated that they intend to hold a shareholder's vote on the Sale Agreement on July 13, 2006, and to consummate the Proposed Sale shortly thereafter.

52.   As a result, plaintiff and the Class have been and will suffer damages, including damages for which they have an inadequate remedy at law.

## THIRD CAUSE OF ACTION

### AIDING AND ABETTING
### (AGAINST KLA-TENCOR)

53.   Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

54.     The Individual Defendants owed plaintiff and ADE's shareholders duties of care, loyalty and disclosure at the common law.  As earlier alleged, the Individual Defendants breached these fiduciary duties.  As alleged in detail above, KLA-Tencor has aided and abetted the Individual Defendants in the breaches of their fiduciary duties to ADE's shareholders.

55.     In this regard, as alleged above, KLA-Tencor is well aware that the Individual Defendants have not sought to obtain the best available transaction for the Company's public shareholders, or to fully disclose all material information.  KLA-Tencor seeks to benefit from this faithless fiduciary performance by obtaining ADE at an inadequate price.  In so acting, KLA-Tencor has knowingly aided and abetted the breaches of fiduciary duty committed by the Individual Defendants.

56.     As a result, plaintiff and the Class have and will suffer damages, including damages for which they have an inadequate remedy at law.

<u>FOURTH CAUSE OF ACTION</u>

**FOR ATTORNEYS' FEES EARNED TO DATE**
**(AGAINST ADE)**

57.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

58.     On June 7, 2006, prior to its removal, plaintiff brought the present action in the Superior Court for Norfolk County alleging that ADE and its directors failed to disclose, *inter alia*, the following material information pertaining to the self interest of ADE's directors and the investment firm that rendered a fairness opinion on which ADE shareholders are being asked to rely, in the preliminary proxy statement that they issued in connection with the Proposed Sale:

> a.   The precise amount that each non-employee director will receive for the accelerated vesting of his unvested stock options.

b.   The amount of payments, including severance payments, that Dr. Koliopoulos is expected to receive under the Koliopoulos Agreement (as defined in the Preliminary Proxy).

c.   ADE's rationale for choosing RBC Capital Markets Corporation ("RBC") to render a fairness opinion.

d.   The amount of fees that RBC will receive for the delivery of its February 21, 2006 opinion to ADE board of directors, including the portion of that fee that was payable upon the closing of the sale of ADE to KLA-Tencor.

e.   The amount of fees that RBC will receive for the delivery of its May 25, 2006 opinion to ADE board of directors, including the portion of that fee that is payable upon the closing of the sale of ADE to KLA-Tencor.

f.   The amount of fees that RBC has received from KLA-Tencor, including any of its subsidiaries or affiliates, for services rendered in the past two year.

g.   The amount of fees that RBC anticipates receiving from KLA-Tencor, including any of its subsidiaries or affiliates, for the anticipated future.

59.   Following the commencement of the action in State Court, ADE and its directors filed the Definitive Proxy Statement, which made each of the above disclosures requested by plaintiff in his original complaint.  This was a direct cause and result of plaintiff's actions in filing and prosecuting this action.

60.   As a result, ADE and its shareholders have benefited and Plaintiff is therefore entitled to recover reasonable attorneys' fees for the benefit provided through these additional disclosures.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment as follows:

1.   determining that this action is a proper class action under Fed. R. Civ. P. 23, and that plaintiff is a proper class representative;

22

2.  declaring that defendants have breached their fiduciary duties to plaintiff and the Class and aided and abetted such breaches;

3.  declaring that defendants have violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n and Rule 14 (a)(9) promulgated thereunder and Mass L. Ch. 110A § 404, Mass L. ch. 110C § 7, § 9;

4.  requiring the defendants to make full disclosure of the material facts that they have omitted from their proxy statement to date;

5.  enjoining the proposed transaction until adequate disclosures are made and considered by shareholders and, if the proposed transaction is consummated, rescinding it;

6.  awarding plaintiff and the class nominal, compensatory and/or rescissory damages as allowed by law;

7.  awarding interest, attorney's fees, expert fees and other costs, in an amount to be determined; and

8.  granting such other relief as the Court may find just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: June 27, 2006           By his attorneys,

/s/ Theodore M. Hess-Mahan
Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
SHAPIRO HABER & URMY LLP
53 State Street
Boston, Massachusetts 02109
(617) 439-3939

*Attorneys for Plaintiff*

*Of Counsel:*

Richard B. Brualdi
Gaitri Boodhoo
Sue Lee
Ayesha Onyekwelu
THE BRUALDI LAW FIRM
29 Broadway, Suite 2400
New York, New York 10006
(212) 952-0602

## CERTIFICATE OF SERVICE

     I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the 27th day of June, 2006.

/s/ Theodore M. Hess-Mahan
Theodore Hess-Mahan